IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

**In Re:**

| | |
|---|---|
| **PJF LIMITED (FAMILY) PARTNERSHIP,** ) ) ) Debtor. ) ) ) | Case No: 21-10632-BFK<br><br>Chapter 12 |

## PETITIONER'S EXPEDITED MOTION FOR TEMPORARY STAY OF ALL FURTHER PLEADINGS IN THIS MATTER UNTIL SUCH TIMES AS ARE ESTABLISHED BY THE ORDER OF THIS COURT

COMES NOW the Petitioner in this Chapter 12 bankruptcy to ask that this Honorable Court, invoking the Court's full equitable powers and on justifiable health and humanitarian grounds, temporarily stay the existing deadlines in these proceedings as follows:

(1) Petitioner shall file its remaining schedules and statements now due April 26, 2021 by the revised date of May 11, 2021.

(2) Petitioner shall cause its attorney to file an appearance in this matter by May 20, 2021 or answer at a hearing scheduled for May 27', 2021 why this bankruptcy should not be dismissed.

(3) Petitioner shall file its opposition to the Wilmington Savings Fund Society's (and all related entities') motion to dismiss and for proposed bar order by May 27, 2021 and to argue same at the hearing scheduled for June 3, 2021.

(4) Petitioner shall file its Chapter 12 Plan by August 12, 2021, but the Court understands that Petitioner intends to have a draft Plan ready for discussion at the hearing on June 3, 2021.

1

As grounds therefor, Petitioner states as follows, which exposition necessarily involves a dive into the detailed context of three interrelated but distinct matters: the long-term health of its general partner ("Fetner"), who filed the *pro se* petition on behalf of Petitioner; the agricultural enterprises of Coachman Farms, the business name of Petitioner, and Mary's Alpaca LLC, an affiliated farm; and the recent downturn of Fetner's health, temporarily it is expected. Petitioner will be as concise as possible.

(a) Fetner was diagnosed with prostrate cancer some ten years ago and has been under "active medical surveillance" since that time. He is currently under the care of doctors at John Hopkins, who are now recommending proton radiation at Sibley Hospital in Washington, D.C. Fetner has been traveling to John Hopkins in Maryland and to Sibley on several occasions to prepare for such therapy, which itself is extensive and time-consuming (five-days a week for nearly two months, each day involving six hours, including lengthy travel from and to The Plains, Virginia). The exact starting time for the radiation has not yet been set, as Fetner must undergo some medical procedures prior to radiation. Although Fetner has always been in excellent general health, his age (78) now complicates matters.

(b) Since 1998, when Fetner's father purchased the property known as "Coachman Farms" in The Plains, Virginia, Fetner has managed the horse breeding operation there and lived on the farm. Fetner's father and mother for many hears had operated in Missouri a horse and dog breeding business under the "Coachman" prefix. When Fetner's father died in 2001 (from complications caused by prostrate cancer) and after extensive estate family litigation, Petitioner was established, with Fetner as general and a limited partner. Fetner has acted as general partner and has certainly managed Coachman

Farms since, for some twenty years. Every year since its formation, PJF Limited Partnership has filed Federal and State tax returns. The Covid pandemic caused Fetner significant disruption in his farming activities, as suppliers, contractors, employees, and tenants became infected, stopped work, or otherwise adversely were forced to adjust their schedules or services. All which added many hours to Fetner's already long days. In 2020 and today, Fetner was and is maintaining 18 horses at Coachman Farms.

(c) In 2013, Fetner assumed the position of COO of Mary's Alpaca, LLC, also operating in The Plains Virginia, the second-largest alpaca breeding operation today in Virginia and an award-winning farm known throughout the United States for its quality genetics. At the time, the alpaca herd at Mary's Alpaca numbered approximately 175 animals; today, the breeding herd has been reduced to a more manageable size of 90. The primary manpower for Mary's Alpaca today comes from three H2A visa workers – alpaca specialists – who travel from Peru every year for ten months' work. Fetner inter alia manages the H2A program, a bureaucratic jungle, which process takes many hours of every week with paperwork, record-keeping, applications and compliance. In 2020, the U.S. Embassy in Peru was closed because of Covid. The visa process ground to a halt, and the workers for 2021 have been unable to return. In this nightmare scenario, Fetner personally has been compelled since December 2020 to feed and otherwise care for 90 alpaca, all taking some 2-3 hours per day, six days per week.

(d) In 2015 and subsequently, Fetner began exploring with the owner of Mary's Alpaca combining certain operations with Coachman Farms to increase business and profitability. The necessity to make adjustments at Coachman was also driven by the

3

recent death of its two primary Belgian stallions. Alpaca were moved to Coachman in 2016-2017.

(e) Fetner and the owner of Mary's Alpaca jointly developed and own the patent rights to a proprietary plant food (appropriately called "Mary's Alpaca Poop") made from specially composted alpaca manure, mycorrhizal fungi, and yucca powder delivered in a water-soluble pod suitable for household use. Fetner today is negotiating the financing to provide Mary's Alpaca with substantial funds for marketing the revolutionary plant food this year to the general public. This effort is expected, together with other joint operations, to form a significant part of Petitioner's Chapter 12 Plan.

(f) In September 2017, following what turned out to be disastrous legal advice, Fetner personally filed a Chapter 11 petition in this Court. The terms "disastrous" is used advisedly, because Chapter 11 is far too complex and expensive for Fetner's resources and purposes, is biased against an individual filer and was biased against Fetner from the beginning, and under the circumstances was beyond the competence of his counsel. Eventually, the petition was involuntarily converted to Chapter 7. Fetner has been forced to assume *pro se* status and pursue extensive appellate remedies and relief, an incredibly time-consuming endeavor. Fetner is a retired attorney, with a distinguished legal education and career, but bankruptcy is a world unto itself. Fetner currently has three appellate matters that require immediate attention: a reply brief on appeal is now due in Federal District Court; an "informal brief" is due April 30 in Richmond in the U.S. Court of Appeals; and a certiorari petition is due at the U.S. Supreme Court. Concurrently with this motion for temporary stay, Fetner is filing similar motions to extend all the appellate deadlines for similar causes. Copies of these motions are

4

attached hereto in Appendices A and B, and Petitioner asks that this Court take judicial notice of same.

(g) On October 15, 2020, Petitioner sued in Fauquier Circuit Court in Virginia, Defendants Bank of America, Wilmington Savings Fund Society, Ocwen Loan Servicing, and Shellpoint Mortgage Servicing for, inter alia, multiple fraud, predatory lending violations of federal and state lending statutes, RICO, and abuse of process in connection with loans to Petitioner in 2005 and 2013 and with Fetner's Chapter 11 Petition. The attorney for the Defendants was notified two days after the filing. Unknown to Petitioner or to Fetner, and without service to Petitioner or to Fetner, said attorney or his law firm in Florida has attempted to remove the case to the Federal District Court for the Eastern District of Virginia on February 18, 2021, followed by a motion to dismiss the Complaint on February 25, 2021, and a "reply" on March 24, 2021 and papers to declare Petitioner in default. Petitioner has received no notices from the State or Federal Court in connection with the activities surreptitiously undertaken by Defendants' counsel. Petitioner learned of all this activity a few days ago online. Petitioner has also just received, on April 20, a huge packet containing two-inches (thick) of documentation relating to a motion to dismiss the Bankruptcy in this Court. A copy of the envelope showing a postmark from Tampa, Florida on April 16 is attached hereto (Appendix C). This is the first filing or communication of any kind from this attorney or this law firm received in many months. The proceedings in the District Court are discussed immediately below. Attached hereto (Appendix D) is Petitioner's motion to Judge Alston in the Federal District Court seeking a similar

5

suspension of deadline, as well as a Suggestion of Bankruptcy notice. That motion speaks for itself and for conciseness is not reiterated here.

(h) In late March 2021, Petitioner received a certified letter from the law firm of Buonassissi Henning & Lash, who had represented Bank of America/Wilmington Savings Fund Society in Fetner's original chapter 11 proceedings in this Court, and were attorneys of record when Bank of America refused to participate in discovery in a lift of stay proceeding, showed utter contempt for this Court, Debtor, and the bankruptcy process and was forced to withdraw its lift motion, and were fully aware of Fetner's and Petitioner's entire dispute with Bank of America and its purported successor in interest, Wilmington Saving Fund Society. The details of such dispute were set forth in the complaint filed in Fauquier Circuit Court in October 2020. In a notice replete with falsehoods, to be raised at the appropriate time, the law firm disclosed a foreclosure sale on the property known as Coachman Farms set for April 13, 2021. It is unclear to Petitioner that the law firm ever formally withdrew its appearance in the original Chapter 11 bankruptcy. With no practical time to engage in a dialogue with this law firm, the author at least in part of the contemptuous and scandalous behavior in the Bankruptcy Court in 2018 (which saga arguably was the root of the subsequent conversion to Chapter 7), Petitioner filed this Chapter 12 on April 12 and so noticed the law firm and other appropriate entities.

(i) The object of the shell game of law firms, Petitioner received on April 20, a notice of hearing and the motion itself to dismiss the Petition filed on April 12 and requesting a "bar order" against Petitioner. Both the hearing notice and the motion are dated April 15 and the certificate of service specifies first-class mailing on April 15. As the Court

6

will see on the attached copy of the envelope containing the above, (see Appendix C) the mailing was actually done in Tampa, Florida on April 16. No overnight delivery, no email or telephonic communication. No certified mail. "Snail" mail on a Friday, arriving the following Tuesday. Wilmington Saving Fund Society now demands that a written objection be filed to the Court by April 29, with a hearing scheduled for May 6. Under all the circumstances, this attempt to blitzkrieg Petitioner is unfair, abusive, and cannot be reasonably met.

(j) Before the Petitioner filed its bankruptcy *pro se* through its general partner Fetner, Fetner determined that available precedent in Virginia was ambiguous and allowed at least the policy argument to be made that the general partner of a close limited family partnership could represent the partnership without the need and expense of outside counsel, especially if by operation of law all the partners were effectively the same person. Both the filing in Virginia Fauquier Court and in this Bankruptcy Court was based upon that conclusion. There does not seem to be unambiguous precedent concerning a limited partnership directly, as opposed to verbiage (dicta) dealing with "artificial entities" and the like. At most, the policy of the federal counts seemed to be clear that after hearing, the petitioner (or plaintiff) would, if required, be given a reasonable time to secure legal representation. Nevertheless, Fetner immediately upon filing began a search for affordable expert counsel. After several discussions, Petitioner has located such representation, who has, however, determined that the best way to secure the desired result is to go into the hearing (now scheduled on May 6) with at least a draft Plan, without taking the 90 days allowed by statute. Counsel did not want Petitioner to incur the expense of Chapter 12 without knowing with some

specificity a workable potential Bankruptcy plan. Moreover, counsel said that the Plan or draft should be filed with the Court a week before the hearing on May 6. Fetner agreed to work to produce such a document. That is where matters stood until receiving the motion to dismiss on Tuesday, April 20. Fetner under the proposal in this stay motion will still work with counsel to produce such a Plan long before the Court's conditional date of July 22, 2021. Fetner has not studied thoroughly the packet received Tuesday but the movant without having seen Petitioner's schedules or its proposed plan asserts facts not in evidence, assumes so-called facts that are false, and is careless with its legal argumentation. Such a motion requires a thorough response to contest the misstatements and falsehoods and arguably faulty legal analysis, all beginning with the demonstrably false certificate of service. Fetner would propose to retain counsel and come to Court with a workable plan and then deal with the several peculiar procedural hurdles raised, many of which appear to be the subjects of active appeal elsewhere.

(k) In addition to this "perfect storm" of legal filings, all complex and lengthy, Fetner has a petition for certiorari in the works concerning constitutional due process issues of standing, a judicial doctrine used to great disadvantage in Fetner's Chapter 11/Chapter 7 proceedings, when it was employed widely to thwart the right to appeal and in fact prevent appeals altogether on their merits.

(l) As evidenced by all the foregoing, Fetner acting *pro se* in good faith throughout, despite the constant hyperbole ("bad faith") of Attorney Narod, has been driving himself to exhaustion. On the weekend of April 19-20, he developed a fever and persistent bronchial cough that prevented sleep and desk work. By Monday, the 21st severe chills sent Fetner to bed. This is not Covid-19, because Fetner has received both doses of the

Moderna vaccine (the reaction to the second shot was debilitating for several days), but work and focus has proved impossible. The chills and fever continue, but the cough at least has abated somewhat. Fetner must regain some sleep and health to permit his body to go forward and allow meaningful participation in the Chapter 12 bankruptcy just filed on April 12, 2021. It has taken every ounce of strength to produce this packet of motions. If the courts will agree to this proposal – all fair, without serious legal prejudice to opposing parties – the extra time will allow Petitioner/Fetner to complete his filings, make a fair case for his legal positions, and permit the assistance of counsel in this cause.

A draft order for the convenience of the Court is attached. Petitioner hereby waives a hearing on this motion and prays that such motion is granted expeditiously on the papers already submitted to the Court or as the Court directs.

Dated: April 23, 2021                                          Respectfully Submitted,

                                                               Petitioner PJF Limited Partnership
                                                               by its General Partner acting *pro se*
                                                               until counsel is secured
                                                               8080 Enon Church Road
                                                               The Plains, Virginia 20198
                                                               540.222.9693
                                                               pjayfetner@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was emailed and mailed first-class, postage prepaid to:

>Andrew J. Narod, Esq.
>Bradley Arant Boult Cumming LLP
>1615 L. Street, N.W., Suite 1350
>Washington, D.C. 20036
>anarod@bradley.com

I am informed that all filings are electronically transmitted through the Court's CM/ECF System to the U.S. Trustee, appropriate bankruptcy trustees, and all parties requesting same.

Dated April 23, 2021

_____
Philip Jay Fetner

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
_Alexandria_ Division

In re:
**PJF LIMITED (FAMILY) PARTNERSHIP**
  Debtor(s)

Case No. **21-10632-BFK**
Chapter **12**

Plaintiff(s)
v.

Adversary Proceeding No.

Defendant(s)

CERTIFICATION UNDER LOCAL BANKRUPTCY RULE 2090-1

Document Title: **Expedited Motion for Temporary Stay**
Date Document Filed: **April 23, 2021**
Docket Entry No.

I declare under penalty of perjury that (Check one box):

☒ No attorney has prepared or assisted in the preparation of this document.
☐ The following attorney prepared or assisted in the preparation of this document.

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)

**PJF Limited Partnership**

~~Name of Pro Se Party (Print or Type)~~     Name of Pro Se Party (Print or Type)

_____, G.P.
Signature of Pro Se Party         Signature of Pro Se Party

Executed on: **April 23, 2021** (Date)

[2090edva v.a. 09/17]